1

2

3

4

5

6

7

8

9

10

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **LOYD'S AVIATION, INC., et al.,** | ) | **1:11-CV-01078 AWI DLB** |
| | ) | |
| **Plaintiffs,** | ) | **ORDER GRANTING** |
| | ) | **DEFENDANTS' RULE 12(B)(1)** |
| **v.** | ) | **MOTIONS TO DISMISS** |
| | ) | |
| **CENTER FOR ENVIRONMENTAL** | ) | |
| **HEALTH, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiffs are a group of small businesses that distribute lead-containing aviation fuel ("Avgas") to air carriers and other aircraft operators at airports across California and the rest of the United States.  On June 30, 2011, Plaintiffs filed a motion for preliminary injunction to enjoin Defendants Center for Environmental Health ("CEH") and Kamala Harris, Attorney General of the State of California ("Attorney General Harris") from enforcing or threatening to enforce the Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") against Plaintiffs.  In conjunction with their motion for preliminary injunction, on August 26, 2011, Plaintiffs filed a First Amended Complaint ("FAC") for Declaratory and Injunctive Relief against CEH, Attorney General Harris, and Dr. George Alexeeff ("Dr. Alexeeff"), Acting Director of the

California Office of Environmental Health Hazard Assessment ("OEHHA").[1]  In the FAC, Plaintiffs seek (1) a declaratory judgment that Proposition 65 violates the Supremacy Clause of the United States Constitution because it is preempted by federal law; (2) a declaratory judgment that Proposition 65 violates the Commerce Clause of the United States Constitution; and (3) an injunction that enjoins Defendants from enforcing or threatening to enforce Proposition 65 against Plaintiffs.

Proposition 65 includes two distinct provisions: (1) the warning provision of California Health & Safety Code § 25249.6, which requires the provision of warnings to individuals exposed to carcinogens and reproductive toxins by those causing the exposure; and (2) the discharge prohibition of California Health & Safety Code § 25249.5, which prohibits entities operating in California from discharging carcinogens and reproductive toxins into sources of drinking water.[2]  Under Proposition 65, any person may file suit in the public interest so long as the private enforcement action is (1) commenced more than sixty days from the notice of alleged violation; and (2) neither the Attorney General nor any other qualified public prosecutor has commenced and is diligently prosecuting an action against the violation.  See Cal. Health & Safety Code § 25249.7(d).

In this case, on May 9, 2011, CEH sent three Notices of Violation of Proposition 65 to

_____

[1]     Plaintiffs filed an original complaint against CEH and Attorney General Harris on June 29, 2011.

[2]     Section 25249.6 provides: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10."  See Cal. Health & Safety Code § 25249.6.

Section 25249.5 provides: "No person in the course of doing business shall knowingly discharge or release a chemical known to the state to cause cancer or reproductive toxicity into water or onto or into land where such chemical passes or probably will pass into any source of drinking water, notwithstanding any other provision or authorization of law except as provided in Section 25249.9."  See Cal. Health & Safety Code § 25249.5.

2

1  Plaintiffs.  All three of the May 9, 2011 Notices of Violation contained allegations that Plaintiffs

2  were violating the "warning requirement" of Proposition 65.  In addition, two of the three May 9,

3  2011 Notices of Violation contained allegations that certain Plaintiffs were violating the

4  "discharge prohibition" of Proposition 65.  On August 16, 2011, CEH issued Amended Notices

5  of Violation, which removed the "discharge prohibition" allegations from the two Notices that

6  included such allegations.

7          Subsequently, on September 2, 2011, Defendants Attorney General Harris and Dr.

8  Alexeeff (collectively "State Defendants") filed a motion to dismiss the FAC, and Defendant

9  CEH filed a motion to dismiss the FAC.[3]  Both motions to dismiss are brought pursuant to Rules

10  12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  On October 3, 2011, the Court

11  held a hearing with respect to these motions.  For the reasons that follow, Defendants' Rule

12  12(b)(1) motions are granted.

13                                    **LEGAL STANDARD**

14          Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack

15  of subject matter jurisdiction.  "It is a fundamental precept that federal courts are courts of

16  limited jurisdiction.  The limits upon federal jurisdiction, whether imposed by the Constitution or

17  by Congress, must not be disregarded nor evaded." Owen Equip. & Erection Co. v. Kroger, 437

18  U.S. 365, 374 (1978).  A challenge to jurisdiction "can be either facial, confining the inquiry to

19  allegations in the complaint, or factual, permitting the court to look beyond the complaint."

20

21          [3]    The Court notes that Dr. Alexeeff and Attorney General Harris serve different
   roles with respect to Proposition 65.  Dr. Alexeeff is the Acting Director of OEHHA, which is
22  the lead agency that implements Proposition 65.  FAC at ¶ 6.  As the lead agency, OEHHA
   exercises the authority to impose and modify "regulations, standards and permits as necessary to
23  conform with and implement [Proposition 65] and to further its purposes." Id. (citing to Cal.
   Health & Safety Code § 25249.12(a)).  Attorney General Harris, as a public prosecutor, enforces
24  Proposition 65 by bringing actions in the name of the People of the State of California.  Id. at ¶ 7
   (citing to Cal. Health & Safety Code § 25249.7).  In their briefs, the parties have not drawn a
25  distinction between Attorney General Harris and Dr. Alexeeff.  Therefore, for the purposes of
   Defendants' motions to dismiss, the Court treats Attorney General Harris and Dr. Alexeeff as a
26  single entity.

27

28                                              3

Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty., 343 F.3d 1036, 1039 n.2

(9th Cir. 2003).  Thus, the Court is not restricted to the face of the pleadings and "may review

any evidence, such as affidavits and testimony, to resolve factual disputes concerning the

existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988)

(citation omitted).  Furthermore, when subject matter jurisdiction is challenged under Rule

12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.

Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

## DISCUSSION

1.　　　Plaintiffs' claims against State Defendants are not ripe for adjudication.

In its reply brief and at the hearing, CEH raised the argument that all of Plaintiffs' claims

against State Defendants are not ripe for adjudication because Attorney General Harris has

explicitly stated that there is no intention to sue Plaintiffs under Proposition 65.[4]  See CEH Reply

at 16:18-19, Doc. 66 at 20; Hearing Transcript at 56:18-25, Doc. 72 at 56.

Ripeness is "peculiarly a question of timing."  Buckley v. Valeo, 424 U.S. 1, 114 (1976)

---

[4]　　　In their motion to dismiss, State Defendants argue that Plaintiffs' discharge claim is not ripe for adjudication, but do not raise the same argument with respect to Plaintiffs' warning claim.  In their supplemental brief, Plaintiffs contend that State Defendants did not raise their ripeness argument as to the warning claim under Proposition 65 because State Defendants intend to join CEH's threatened state lawsuit as a plaintiff or intervenor.  Plaintiffs' Supplemental Brief at 10:9-11, Doc. 73 at 16.  Plaintiffs cite to the hearing transcript where counsel for CEH states that "I understand . . . the Attorney General will want to be involved in one way or the other, be it as an intervenor or as a party, so they may have not pushed that [ripeness argument]."  Hearing Transcript at 57:1-3, Doc. 72 at 57.  Therefore, Plaintiffs argue that their claims against State Defendants are ripe because State Defendants intend to join CEH's state lawsuit.  Plaintiffs' Supplemental Brief at 10:14-16, Doc. 73 at 16.

Plaintiffs fail to quote a pertinent part of the hearing transcript.  Counsel for CEH stated that "*if this case proceeds* then the Attorney General will want to be involved one way or the other[.]"  Hearing Transcript at 57:1-3, Doc. 72 at 57 (emphasis added).  Thus, CEH explains in their supplemental brief that if the federal court case continues against CEH then State Defendants want to be involved.  CEH Supplemental Brief at 7 n.4, Doc. 75 at 8.  CEH further explains that State Defendants did not raise the ripeness argument as to the warning claim because "that argument could lead to their dismissal while the case proceeds against CEH in their absence."  Id.  As will be discussed, State Defendants make clear that they will not file suit in state court.  Accordingly, Plaintiffs' argument that their claims against State Defendants are ripe because State Defendants plan to be involved in CEH's state court lawsuit is unpersuasive.

4

1   (citation omitted).  The basic rationale behind the ripeness doctrine "is to prevent the courts,

2   through premature adjudication, from entangling themselves in abstract disagreements," when

3   those "disagreements" are premised on "contingent future events that may not occur as

4   anticipated, or indeed may not occur at all."  Thomas v. Union Carbide Agr. Prods. Co., 473 U.S.

5   568, 580-581 (1985).  "Our role is neither to issue advisory opinions nor to declare rights in

6   hypothetical cases, but to adjudicate live cases or controversies consistent with the powers

7   granted the judiciary in Article III of the Constitution."  Id.

8          When a litigant brings a preenforcement challenge, "a generalized threat of prosecution

9   will not satisfy the ripeness requirement."  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1122 (9th

10  Cir. 2009) (internal quotation marks and citation omitted).  "Rather, there must be a 'genuine

11  threat of imminent prosecution.'"  Id.  Plaintiffs must face a "realistic danger of sustaining a

12  direct injury as a result of the statute's operation or enforcement[.]"  Babbitt v. United Farm

13  Workers Nat'l Union, 442 U.S. 289, 298 (1979).  Thus, "[w]hen plaintiffs 'do not claim that they

14  have ever been threatened with prosecution, that a prosecution is likely, or even that a

15  prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a

16  federal court."  Id. (citing to Younger v. Harris, 401 U.S. 37, 42 (1971)).

17         In evaluating the genuineness of a claimed threat of prosecution, courts look to (1)

18  whether the plaintiffs have articulated a "concrete plan" to violate the law in question; (2)

19  whether the prosecuting authorities have communicated a specific warning or threat to initiate

20  proceedings; and (3) the history of past prosecution or enforcement under the challenged statute.

21  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).[5]  A

22

23          [5]     The parties agree that the three-pronged ripeness test from Thomas applies to this
24  case.  However, Plaintiffs argue in their supplemental brief that their claims are ripe even if the
    Court concludes that their claims against State Defendants are unripe under Thomas.  Plaintiffs'
25  Supplemental Brief at 10:17-24 and 11:1-14, Doc. 73 at 16.

26          Plaintiffs contend that their claims are ripe because "Proposition 65's warning
    requirement imposes an ***affirmative obligation*** on Plaintiffs that is preempted under federal law."

27

28                                          5

plaintiff must establish all three elements in its favor in order to survive a motion to dismiss on ripeness grounds.  See Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir. 2006) (dismissing plaintiff's claim based on ripeness despite satisfying two out of three prongs of the Thomas test).

In this case, Plaintiffs do not face a "realistic danger of sustaining a direct injury" as a result of the enforcement of Proposition 65 by State Defendants.  Id.  The State Defendants have not communicated a specific threat or warning to initiate proceedings against Plaintiffs under Proposition 65.  Throughout the proceedings, State Defendants have been unequivocal that there is no intention to bring any suit under Proposition 65 against Plaintiffs.  For example, counsel for State Defendants explained at the hearing:

> I want to start out by making one thing very clear.  The Attorney General has no intention of suing the aviation gas, the AvGas Companies.  They said it publicly to Congress.  We have said it in our brief.  It appears the companies keep saying, "Well, you say it, but you don't mean it," and, in fact, we do mean it, Your Honor.  There are no plans to sue them, and we are not going to.  We're going to defend the matter aggressively, but not file suit in state court.

Id. at 10:18-20, Doc. 73 at 16.  Plaintiffs state that the "Supreme Court has found pre-enforcement challenges ripe even before a statute has gone into effect, on the ground that plaintiffs were expected to incur costs coming into compliance with an allegedly unconstitutional affirmative obligation."  Id. at 10:20-22, Doc. 73 at 16.  Plaintiffs cite to, inter alios, Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).  Plaintiffs contend that Abbott held "that drug manufacturers could obtain judicial review of a regulation whose effective date lay in the future" because of the costs they "would incur in preparing to comply[.]"  Id. at 10:23-24 and 11:1-3, Doc. 74 at 16-17.

Plaintiffs' argument is misplaced.  "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  Nat'l Park Hosp. v. Dep't of Interior, 538 U.S. 803, 808 (2003).  While Article III ripeness is jurisdictional, "[p]rudential considerations of ripeness are discretionary.  McClung v. City of Sumner, 548 F.3d 1219, 1224 (9th Cir. 2008) (citation omitted).

The three-pronged ripeness test from Thomas relates to the constitutional component of the ripeness doctrine.  Thomas, 220 F.3d at 1139.  The Abbott case, which Plaintiffs rely on, sets forth the ripeness test relating to the prudential component of the ripeness doctrine.  Id. at 1141.  Since the Court concludes below that Plaintiffs have not met the constitutional requirement for ripeness, the Court will not address the doctrine's prudential components.  See Colwell v. Dep't of Health and Human Services, 558 F.3d 1112, 1123 (9th Cir. 2009) (noting that if a plaintiff meets the constitutional ripeness requirement, the next step is an analysis of the prudential considerations).

6

1   Hearing Transcript at 5:15-23, Doc. 72 at 5; see also Susan Fiering Declaration Exhibit D, Doc.

2   43-4 at 2-3 (August 25, 2011 letter sent from Attorney General Harris to the Secretary of

3   Transportation and the Administrators of the Federal Aviation Administration and the U.S.

4   Environmental Protection Agency explaining that "the California Attorney General has not taken

5   steps to file suit under California's Proposition 65 against the aviation gas companies based on

6   the CEH notices of intent to sue, and has no plans to do so"); State Defendants' Supplemental

7   Brief at 5:27-28, Doc. 74 at 6 (stating that "the Attorney General has disclaimed any intent to

8   enforce [Proposition 65] against [Plaintiffs] for their sale of leaded Avgas).

9          In addition, Plaintiffs have not identified any relevant history of past prosecution or

10  enforcement under Proposition 65 by State Defendants.  Plaintiffs have failed to point to a single

11  instance where State Defendants have prosecuted parties that are similarly situated to Plaintiffs

12  under Proposition 65.[6]  See Lopez v. Candaele, 630 F.3d 775, 786-87 (9th Cir. 2010) (stating that

13  a "history of past enforcement against parties similarly situated to the plaintiffs cuts in favor of a

14  conclusion that a threat [of prosecution] is specific and credible").

15         Finally, Plaintiffs have not articulated a concrete plan to violate Proposition 65.  While

16  Plaintiffs concede that they intend to continue to fuel piston aircrafts with Avgas, it is unclear

17  whether this conduct actually violates Proposition 65.  Plaintiffs' Opposition at 17:16, Doc. 59 at

18  24.  In fact, Plaintiffs maintain that their conduct is lawful under Proposition 65.  Id. at 18:2-3,

19  Doc. 59 at 25.  Plaintiffs are thus in a different situation from the plaintiffs in Jacobus v. Alaska,

20  338 F.3d 1095, 1105 (9th Cir. 2003) because the Jacobus plaintiffs had "gone far beyond the

21  requirement that they articulate a concrete plan to violate the law, and instead have actually

22  engaged in the illegal behavior at issue."  Therefore, Plaintiffs have not articulated a concrete

23  plan to violate Proposition 65.

24
25         [6]     The Court notes that Plaintiffs cited to a Proposition 65 case that was brought by a
private party against suppliers of leaded Avgas.  Plaintiffs' Opposition at 20:18-22, Doc. 59 at
26  27.

27

28                                          7

1    In light of the above, the Court concludes that Plaintiffs have failed to establish that there

2  is a "genuine threat of imminent prosecution" by State Defendants against Plaintiffs under

3  Proposition 65.  Plaintiffs' claims against State Defendants are not ripe for adjudication.

4  Accordingly, Plaintiffs' claims against State Defendants are dismissed without prejudice.

5        2.      The Court lacks subject matter jurisdiction over CEH.

6    Since the Court has concluded that Plaintiffs' claims against State Defendants are not

7  ripe, Plaintiffs must establish that subject matter jurisdiction exists over its claims against CEH.

8    In their supplemental brief, Plaintiffs argue that even if the Court concludes that

9  Plaintiffs' claims against State Defendants are not ripe, the Court has subject matter jurisdiction

10  over their claims against CEH under Shaw v. Delta Airlines, Inc., 463 U.S. 85 (1983).  Plaintiffs'

11  Supplemental Brief at 11:24, Doc. 73 at 17.  In Shaw, the Supreme Court held that "federal

12  courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."

13  Shaw, 463 U.S. at 96 n.14.  Therefore, the Supreme Court stated that a "plaintiff who seeks

14  injunctive relief from state regulation, on the ground that such regulation is pre-empted by a

15  federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus

16  presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to

17  resolve."  Id. (citations omitted).

18    CEH cites to California Shock Trauma Air Rescue v. State Compensation Insurance

19  Fund, 636 F.3d 538 (9th Cir. 2011), which dealt with whether the Shaw doctrine applies to

20  private parties.  In California Shock Trauma, the Ninth Circuit discussed the Supreme Court's

21  rationale in Shaw:

22

23          In Shaw, the Supreme Court predicated its jurisdictional holding on the fact that a state
          official was the defendant.  Relying on Ex parte Young, the Court held that there was
24          arising under jurisdiction over an action against a state attorney general, acting in his
          official capacity, who allegedly violated federal law.  A Supremacy Clause-related claim
25          against a state official was the logical extension of the jurisdictional rule set forth in Ex
          Parte Young.  The structure of the Shaw syllogism confirms its conclusion.  In footnote
26          14, Shaw reiterates its major premise: Jurisdiction exists over federal actions to enjoin

27

28                                       8

1  state officials.  When confronted with the <u>Shaw</u> plaintiff's Supremacy Clause claim

2  against a state official, the Court explained that such a claim "thus presents a federal
   question."

3  <u>Id.</u> at 543 (internal citations omitted).

4      The Ninth Circuit in <u>California Shock Trauma</u> held that "because the presence of a state

5  official is crucial to the reasoning in <u>Shaw</u>, its holding is irrelevant" to an action against private

6  parties.  <u>Id.</u>  In coming to this conclusion, the Ninth Circuit emphasized that "[f]ederal subject

7  matter jurisdiction jurisprudence is not an area of the law that lends itself to the application of

8  broad principles.  It is a precise analysis.  The line is clearly drawn . . . between controversies that

9  are basic and those that are collateral, between disputes that are necessary and those that are

10  merely possible."  <u>Id.</u> at 544 (format altered).  The Ninth Circuit explained that actions against

11  state officials are "basic" and "necessary" whereas "[d]eclaratory judgments against private

12  parties, regardless of whether the Supremacy Clause has been invoked, are not."  <u>Id.</u> (citations

13  omitted).

14      In response, Plaintiffs argue that CEH's reliance on <u>California Shock Trauma</u> is

15  "misplaced" because it does not address the issue of "whether the <u>Shaw</u> doctrine vests district

16  courts with subject matter jurisdiction over private parties that stand in the shoes of public

17  officials and seek civil penalties . . . as citizen enforcers of state law."  <u>Plaintiffs' Supplemental</u>

18  <u>Brief</u> at 12:21-26, Doc. 73 at 18.  Plaintiffs' argument is thus the following:

19      The <u>Shaw</u> Court traced its holding to <u>Ex Parte Young</u>, 209 U.S. 123 (1908), which
       authorized federal courts to enjoin state officials from interfering with federal rights,
20      notwithstanding state sovereign immunity.  <u>Ex Parte Young</u> opened the door to injunctive
       relief actions against state officials under 42 U.S.C. § 1983 for violations of federal
21      rights.  There is thus a close nexus between § 1983 (which provides a cause of action for
       injunctive relief suits against state officials who violate federal Constitutional rights) and
22      the <u>Shaw</u> doctrine (which recognizes subject matter jurisdiction over similar suits based
       on the Supremacy Clause).
23      . . .

24      Parallel case law from the analogous § 1983 context demonstrates that subject matter
       jurisdiction over the claims against CEH, even without the Attorney General, *does* exist
25      in the particular circumstances presented here.

26

27

28                                      9

Section 1983 creates a cause of action for constitutional violations committed by individuals acting "under color of state law." <u>Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency</u>, 440 U.S. 391, 399 (1979) ("Section 1983 provides a remedy for individuals alleging deprivations of their constitutional rights by action taken 'under color of state law.'").  Whether the defendant acted under color of state law depends on whether the defendant is a state official for Fourteenth Amendment purposes.  <u>See</u> <u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 928–29 (1982).  Private parties are considered state officials for Fourteenth Amendment purposes in several circumstances, including (1) where the state and the private party maintain a sufficiently interdependent or symbiotic relationship (<u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715 (1961)), and (2) where the private person or entity exercises a traditionally exclusive state function (<u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 842 (1982)).

The same tests used by courts to ascertain state action in the context of § 1983 suits should apply in cases, including this one, involving the <u>Shaw</u> doctrine.  In both contexts, the state actor requirement serves the same purpose of "limiting the reach of federal law and federal judicial power" (<u>Lugar</u>, 457 U.S. at 936), while also protecting important constitutional rights.  If certain private conduct is sufficiently cloaked with state authority to permit the imposition of § 1983 liability, it ought to be enough to give federal courts the jurisdiction to enjoin threatened constitutional violations.  Applying § 1983's state actor tests here vests this Court with jurisdiction for two reasons.  First, CEH and the Attorney General have a symbiotic relationship for purposes of this suit.  Second, CEH, by maintaining its threatened Proposition 65 lawsuit on behalf of the State, is exercising a traditionally exclusive state function.

<u>Id.</u> at 12:7-13, 12:26 and 13:1-23, Doc. 73 at 18-19.

Plaintiffs concede that this is an issue of first impression within the federal courts and thus have been unable to cite to *any* case in which there exists federal subject matter jurisdiction over a declaratory judgment claim brought by a private party against another private party that "stands in the shoes of public officials."  The Court is not persuaded by Plaintiffs' argument.  As stated above, the Ninth Circuit made clear in <u>California Shock Trauma</u> that subject matter jurisdiction is "a precise analysis" and that "the line is clearly drawn" between actions against state officials and against private parties under the <u>Shaw</u> doctrine.  <u>California Shock Trauma</u>, 636 F.3d at 544.  Furthermore, the Ninth Circuit "bolstered" their conclusion in <u>California Shock Trauma</u> by citing to other circuits that have similarly held that <u>Shaw</u> does not apply to private parties.  <u>Id.</u> (citing to <u>Colonial Penn Grp., Inc. v. Colonial Deposit Co.</u>, 834 F.2d 229, 237 (1st Cir. 1987) ("Jurisdiction over actions for declarations of pre-emption can logically only be

10

asserted where a state official is the defendant"); Albradco, Inc. v. Bevona, 982 F.2d 82, 87 (2d Cir. 1992) ("Because [plaintiffs] have not sued state officials to enjoin them from enforcing an unconstitutional state law, this case is distinguishable from Shaw"); New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 330 (5th Cir. 2008) (Shaw "does not apply in a suit exclusively between private parties").

Accordingly, Plaintiffs have failed to establish that this Court has jurisdiction over their claims against CEH.

## CONCLUSION

The Court concludes that there is no jurisdiction over any of Plaintiffs' claims. Accordingly, Defendants' Rule 12(b)(1) motions to dismiss are GRANTED.  Plaintiffs' FAC is DISMISSED without prejudice.  In light of the Court's dismissal of Plaintiffs' FAC, Plaintiffs' motion for preliminary injunction is DENIED as moot.


IT IS SO ORDERED.

Dated:    October 18, 2011                                          _____

CHIEF UNITED STATES DISTRICT JUDGE